UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELIZABETH BRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 1:03-cv-1709-DFH-TAB |
| | ) | |
| COLGATE-PALMOLIVE COMPANY | ) | |
| and HILL'S PET NUTRITION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON MOTION FOR SANCTIONS

Plaintiff Elizabeth Bright at a factory owned by defendant Hill's Pet Nutrition Indiana ("Hill's"), a manufacturer of pet food and a subsidiary of Colgate-Palmolive Company. Bright alleged that she was subjected to a sexually discriminatory work environment that Hill's failed to remedy, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* She also alleged that Hill's retaliated against her with disciplinary measures and ultimately with termination for complaining of harassment and discrimination. Bright also alleged that Hill's violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* The court granted in part and denied in part the defendants' motion for summary judgment. *Bright v. Colgate-Palmolive Co.*, 2005 WL 1799440 (S.D. Ind. July 26, 2005). The surviving claims were tried to

a jury over six days in October 2005.  The jury found in favor of the defense on all claims.

One additional item has remained for resolution.  One week before trial, Hill's filed a motion for sanctions or in the alternative for reconsideration of portions of the summary judgment denying the motion.  The motion was based on information that had just come to light in a supplemental deposition of the plaintiff and some additional documents she produced, saying she had just discovered them in her belongings.  The court elected not to postpone the trial but to allow full presentation of the recent disclosures and the prior inconsistent statements.  On the first day of trial, plaintiff filed a response to the motion.  The court deferred resolution of the motion until after the trial.  As explained below, the court denies the motion for sanctions.

The focus of the sanctions motion is the series of events that resulted in Bright's departure from Hill's and her acceptance of a job as a security screener with the then-new federal Transportation Security Administration.  Plaintiff has claimed that she was constructively discharged while she was attending a TSA event in Cincinnati on November 9-10, 2002, when she learned that her Hill's Area Leader said that she would be fired if she did not work overtime that had been assigned to her for the evening of November 9th.  (Bright thought she had arranged for a co-worker to do the overtime for her.  The co-worker was not allowed to do the extra work because she had already worked too many hours

before the start of Bright's scheduled overtime.)  Bright's story was that she then concluded that her firing was imminent and decided to accept the TSA job even though the pay was lower than the pay at Hill's.  She has also argued that Hill's in fact terminated her employment before she resigned.

Bright's original account of these events in her interrogatory responses and initial deposition was that she had filled out an on-line TSA application in August or September 2002, was then invited for further testing on November 9-10 in Cincinnati, and that she was offered the TSA job late in the day on November 10th, after she believed she would be fired by Hill's for failing to work overtime on November 9th.  For purposes of summary judgment, defendants accepted this original account from Bright.  The court found there was a genuine issue of material fact as to whether Bright had been constructively discharged by Hill's.

Defendants eventually overcame some of the challenges of securing non-party discovery from a federal government agency.  In June 2005 and on September 21, 2005, defense counsel received letters from the TSA with different information.  According to the TSA's letter of September 21, 2005, Bright was tested for TSA employment on September 5 and 10, 2002, including a physical examination on September 10th.  TSA also stated that Bright's employment began on November 10, 2002, when she took the oath of office and received orientation.

Hill's then took a supplemental deposition of Bright in late September 2005. In the supplemental deposition, she testified that she had actually applied for work with the TSA back in July 2002. She testified for the first time about the September 2002 testing by the TSA. She also testified that she received the TSA job offer the first thing on the morning of November 10th rather than at the end of the day. She also testified that TSA had offered her a job at the Cincinnati airport back in September 2002, but that she had chosen not to take that job because it was so far from her home. She waited instead until there was an opening closer to home at the Dayton airport, which was the position she took on November 10th. She also testified that she was notified she was in the hiring pool for Dayton several days before November 10th, and thus before she decided not to do the scheduled overtime work at Hill's on November 9th and before she was told that if she did not do the work she would lose her job at Hill's. The TSA letter of May 31, 2005 stated that Bright had been given an offer of conditional appointment on November 8, 2002. See Bates No. H/B001387.

Bright's discovery responses were incomplete and incorrect. Were they deliberately dishonest? Based on the complete trial, it is apparent that plaintiff Bright has only a loose grip on the difference between true and false. She views the world through the eyes of a victim who believes she has suffered many wrongs. In the court's view, she may honestly believe what she says when she says it, but she simply is not credible, reliable, or consistent. She answers what she believes

is in her best interests at the time, regardless of whether that is consistent with prior statements or reality.

Such unreliable and incomplete discovery responses could justify singificant sanctions. Ultimately, however, the court is satisfied that the trial itself provided the most effective sanction against Bright for her incorrect and incomplete discovery responses. Hill's was able to present detailed evidence about those topics. Hill's side-by-side comparison of Bright's medical history answers in the medical examination for purposes of FMLA leave and her very different answers in the medical examination for purposes of employment with TSA – answers given just six days apart – was as effective as any cross-examination this court has seen in a civil trial. See Exhibits 249 and 279, and relevant cross-examination. That examination devastated Bright's credibility. What's more, Bright was passing the tests for the TSA while she was on FMLA-approved leave for Hill's based on her claim that she was not able to work at the time. The impeachment of Bright based on the events leading to her resignation from Hill's and her employment with the TSA made a major contribution to the jury verdict for the defense on all issues. That impeachment was all the more effective because it addressed not a collateral issue but an issue the jury itself still needed to decide: whether Hill's constructively discharged Bright.

The court has considered carefully whether it should modify the summary judgment ruling on the constructive discharge issue. It is a close call, but the

court ultimately concludes there is no need for such modification.  Under the generous standard that applies to a motion for summary judgment, the evidence could still permit a finding that Bright did not finally accept the TSA job until after she learned that the Area Leader at Hill's had said she would lose her job because she had not shown up for the scheduled overtime work.  If the jury had accepted Bright's evidence and had also drawn inferences in her favor about why her substitute was not allowed to work and about a more general desire at Hill's to retaliate against her for exercising her rights under the FMLA and for complaining about sex discrimination and sexual harassment, the jury might also have concluded that she took the TSA job based in substantial part on what the Area Leader had said.  See *EEOC v. University of Chicago Hospitals*, 276 F.3d 326, 332 (7th Cir. 2002) ("When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge.").  The court is not saying those things are true, of course, but only that they remained issues for trial rather than summary adjudication.  In fact, the defense version is far more persuasive, and apparently the jury viewed it that way as well.  Bright was not an effective employee at Hill's and was unhappy there, and she looked actively for other work.  She did not leave Hill's until she had actually begun her work with the TSA.

Accordingly, the court denies the defense motion for sanctions, and will enter final judgment in favor of the defendants.

So ordered.

Date: September 29, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Jane A. Dall
BAKER & DANIELS
jane.dall@bakerd.com

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@fed-law.com

Susan W. Kline
BAKER & DANIELS
swkline@bakerd.com